UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

FREDERICK "HANK" ROBAR,

                Plaintiff,

-against-

VILLAGE OF POTSDAM BOARD
OF TRUSTEES, RON J. TISCHLER,
as Mayor of the Village of Potsdam and
member of the Village of Potsdam Board
of Trustees, STEVEN WARR, as Deputy
Mayor of the Village of Potsdam and
member of the Village of Potsdam Board
of Trustees, LISA NEWBY, as Code
Enforcement Officer of the Village of
Potsdam, and GREGORY L. THOMPSON,
as Administrator of the Village of Potsdam,

                Defendants.

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

Civil Action No.: 8:20-cv-972 (LEK/DJS)

---

Plaintiff Frederick "Hank" Robar ("Plaintiff" or "Mr. Robar"), by and through his attorneys Whiteman Osterman & Hanna LLP, as and for his Verified Complaint in this action, alleges:

## NATURE OF THE ACTION

1. This is a civil rights action brought under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Defendants are attempting to forcibly destroy and remove artistically repurposed porcelain planters created by Plaintiff and installed on seven private properties in the Village of Potsdam, and to prohibit Plaintiff from his constitutional right to political protest based solely on the medium of his message.

2. Plaintiff seeks a declaration that Defendants' threatened action would violate his constitutional rights to artistic expression and political protest and violate the Visual Artist Rights Act; a declaration that Plaintiff's art does not constitute "junk" under the Village of Potsdam Junk

Storage Law, a preliminary and permanent injunction enjoining the enforcement of Defendants' free speech restrictions; damages for the loss of Plaintiff's constitutional rights; and an award of reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 42 U.S.C. § 1983.

## PARTIES

3. Plaintiff Frederick "Hank" Robar is a life-long resident of the Village of Potsdam, New York (the "Village").

4. Plaintiff owns seven properties within the Village, respectively located at 10 Pine Street (Parcel No. 64.066-1-14.1), 79 Maple Street (Parcel No. 64.066-1-8), 81-83 Maple Street (Parcel No. 64.066-1-9), 85 Maple Street (Parcel No. 64.065-2-11), 87 Maple Street (Parcel No. 64.065-2-10), 82 Market Street (Parcel No. 64.058-8-11), and 84 Market Street (Parcel No. 64.058-8-12) (collectively, the "Properties").

5. Defendant Village of Potsdam Board of Trustees (the "Village Board") is a municipal entity.

6. Defendant Ron J. Tischler (the "Mayor") is the Mayor of the Village of the Potsdam and a member of the Village Board of Trustees, and is sued herein in his official capacity.

7. Defendant Steven Warr ("Deputy Mayor") is the Deputy Mayor of the Village of the Potsdam and a member of the Village Board of Trustees, and is sued herein in his official capacity.

8. Defendant Lisa Newby (the "CEO") is the Code Enforcement Officer for the Village of Potsdam, and is sued herein in her official capacity.

9. Defendant Gregory L. Thompson (the "Administrator") is the Village Administrator of the Village of Potsdam, and is sued herein in his official capacity.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action concerns Plaintiff's rights under the Constitution of the United States.

11. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure. Plaintiff's claims for damages and litigation costs are authorized by 42 U.S.C. §§ 1983 and 1988.

12. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), because the events giving rise to this action occurred in this District.

## STATEMENT OF FACTS

### Plaintiff's Art

13. In 2005, Mr. Robar received an offer to purchase his properties at 82-84 Market Street (the "Market Street Properties"), in the Village of Potsdam. The potential purchaser desired to construct and operate a Dunkin Donuts franchise on the Market Street Properties.

14. At that time, the Market Street Properties were located within the Village's B2 zoning district (light commercial), and the proposed franchise was deemed a heavy commercial use. The Purchase Agreement provided that the sale was contingent upon the Village granting a special use permit and/or zoning variance for the Properties.

15. Mr. Robar's applications for a special use permit and/or zoning variance were denied by the Village, including because the St. Lawrence County Planning Board and Village officials apparently felt that a Dunkin Donuts franchise would be "inconsistent" with neighboring property uses. As a result, the sale fell through.

16. During the approval process, Mr. Robar was told by Village officials that an apartment complex or business office would have been allowed at the Market Street Properties,

but that the proposed Dunkin Donuts franchise would never be. Mr. Robar felt that he was treated unfairly by the Village. The Village's purported rationale simply did not pass the smell test, as the area was becoming increasingly commercialized, including with other food service businesses.

17.   Following the denial, Mr. Robar undertook to call attention to his Property, by painting an existing structure thereon with bold, bright colors, and by placing repurposed toilets on the yard, with colorful flower arrangements inside the porcelain bowls.

18.   These first porcelain planters were installed as a political protest against the Village, and its refusal to allow Mr. Robar to use his private Properties at he wished.

19.   A curious thing happened next. Mr. Robar's friends and neighbors began to reach out, telling Mr. Robar that they loved the protest. Whenever Mr. Robar was outside working on his lawn, passing cars would honk, smile, and wave.

20.   As the positive feedback continued to flow, Mr. Robar fell in love with the artistic and expressive value of the toilets as fun and funky porcelain planters. Thus began Mr. Robar's career as an artist.

21.   Mr. Robar's artistic message in repurposing toilets into porcelain planters is threefold: (1) they express Mr. Robar's belief that one should be allowed to use his or her private property in whatever manner one wants, and they protest the Village's disparate and unfair approach to zoning applications, (2) they express Mr. Robar's belief that beauty can be found in the simplest and strangest items, and (3) they express the fun, bright, and unique character of Mr. Robar's hometown and community.

22.   Mr. Robar's repurposing of toilets into porcelain planters follows a long tradition of decorative repurposing in the North Country. Lawns and porches throughout the North Country – and the Village of Potsdam specifically – are adorned with repurposed milk jugs (transformed

into painted planters), repurposed tires (also transformed into planters), repurposed beer kegs, and other repurposed lawn decorations.

23. Mr. Robar's artistic take on this tradition includes cleaning out porcelain bowls, removing all functional components, placing colorful flower arrangements therein, and thoughtfully arranging the repurposed planters into "porcelain gardens," with colorful painted posts and other accompanying plant arrangements.

24. Since 2005, Mr. Robar's artistic installations have gradually expanded to all of his Properties within the Village.

25. Mr. Robar's art has been featured in documentaries, innumerable newspaper articles, news reports, and even a tourism publication.

26. In 2006, Mr. Robar received an offer to purchase his properties at 79 Maple Street, 81-83 Maple Street, 85 Maple Street, and 87 Maple Street (collectively, the "Maple Street Properties"). The Purchase Agreement provided that the sale was contingent upon the Village rezoning the Maple Street Properties from the R4 zoning district to the B1 zoning district.

27. Once again, the Village denied Mr. Robar's application. Upon information and belief, this denial was in retaliation for Mr. Robar's porcelain protest.

28. Mr. Robar recently entered into a licensing and royalty agreement with an established documentarian, authorizing the production of a short film featuring his art. Filming began in July 2020.

29. A separate documentary production with a local videographer is also underway.

<u>The Village's Custom and Policy to Suppress Mr. Robar's Art</u>

30. While Mr. Robar's art has been extraordinarily well-received by the people of Potsdam, Village officials have attempted for years to suppress the art.

31. On or about April 3, 2008, the Village Code Enforcement Officer purported to issue an Order to Remedy Violation against Mr. Robar for his Property at 82 Market Street, alleging that his art violated Chapter 142-11 of the Village Zoning Code ("Retention of garbage and bulky waste").

32. On or about September 4, 2008, the Village Code Enforcement Officer purported to issue another Order to Remedy Violation against Mr. Robar for his Property at 82 Market Street, alleging that his art violated Chapter 142-11 of the Village Zoning Code.

33. On September 12, 2008, the Village Code Enforcement Officer purported to issue an appearance ticket (Ticket No. 105136), dated September 12, 2008, against Mr. Robar, claiming that his repurposed porcelain planters violated Chapter 142-11 of the Village Zoning Code. The ticket required Mr. Robar to appear for a code enforcement proceeding before the Village Court on September 24, 2008. The matter was ultimately dismissed by the Village Court for failure to file a supporting Information.

34. In April 2009, a resident of the Village wrote to the Watertown Daily Times, which published his letter attesting "Mr. Robar makes use of recycled ceramic toilets and latrines, along with other decorative items, as a means to protest what he views as vagaries in village laws and the elected officials carrying out these laws. Regardless of whether one likes his art display or agrees with his point of view, Mr. Robar is lawfully exercising his First Amendment rights."

35. On or about December 23, 2009, the Village Code Enforcement Officer purported to issue yet another Order to Remedy Violation against Mr. Robar for his Property at 82 Market Street, alleging that his art violated Chapter 142-11 of the Village Zoning Code. The Order to Remedy offensively described Mr. Robar's art as "non-recyclable solid waste."

36. On or about February 12, 2010, the Village Code Enforcement Officer again purported to issue an appearance ticket (Ticket No. 105139) against Mr. Robar for the 82 Market Street Property. The ticket again charged Mr. Robar with violation of Chapter 142-11 of the Village Zoning Code. The ticket offensively described Mr. Robar's art as "dangerous solid waste."

37. Mr. Robar appeared before the Village Court on February 24, 2010. The proceeding was ultimately dismissed.

38. In an article published February 24, 2010, in the Watertown Daily Times, Mr. Robar was quoted as saying "Those toilets aren't dangerous. They're flower pots. It's art."

39. In the same article, Village Trustee Ruth Garner is quoted as saying that Mr. Robar's planters are "not art but an eyesore."

40. On April 26, 2010, a columnist for the Watertown Daily Times published an article titled "A tortured artist on trial in Potsdam." The article noted that the Village was "persecuting [Mr. Robar] for his art."

The Village's Adoption of a "Junk Storage Law" to Suppress Mr. Robar's Art

41. After the Village's first several attempts to suppress Mr. Robar's artistic expression failed, Village officials concocted a new approach.

42. In 2010, the Village adopted a "Junk Storage Law" for the purpose of suppressing Mr. Robar's art, but apparently never proceeded to file the local law with the New York Department of State.

43. On December 3, 2018, the Village Board adopted another new "Junk Storage Law," incorporated as Chapter 125 of the Village Code (the "Junk Storage Law" or the "Law").

44. The Law was filed with the New York Department of State on December 6, 2018.

45. The Junk Storage Law provides that "a clean, wholesome and attractive environment is of vital importance to the continued general welfare of [the Village's] citizens and that the deposit, accumulation or maintenance of junk material, regardless of quantity, is hereby prohibited anywhere within sight of persons lawfully traveling the public highways, streets or thoroughfares of the Village or within sight of neighboring properties." Village Code § 125-2.

46. The Law defines "junk" as "[w]orn out or discarded material of little or no value, including, but not limited to, junk appliances, junk furniture, junk mobile home(s), junk motor vehicle(s) and/or garbage and/or rubbish, clutter, litter and debris." Village Code § 125-3.

47. The Junk Storage Law was adopted in retaliation for Mr. Robar's political speech and artistic expression.

48. The Junk Storage Law is an official and express Village policy that not only causes but is the moving force behind the Village's long-standing efforts to deprive Mr. Robar of his constitutional rights to free speech, artistic expression, and political protest.

49. To erase any doubt that the Junk Storage Law was targeted at Mr. Robar, after it was adopted, on or about November 7, 2019 and December 12, 2019, Defendant Administrator Thompson sent letters to Mr. Robar "as a courtesy to inform you of Chapter 125 of the Village of Potsdam Municipal Code titled 'Junk Storage Law.'"

50. On or about June 5, 2020, the Defendant Code Enforcement Office purported to serve seven separate notices to comply to Mr. Robar, one for each of the respective Properties (collectively, the "Notices to Comply").

51. The Notices to Comply alleged that Mr. Robar's art are "junk" and violate the new Junk Storage Law.

52. By letter dated June 10, 2020, Mr. Robar requested a hearing on each of the Notices to Comply, pursuant to section 125-9 of the Junk Storage Law.

53. A hearing was held before the Village Board on June 29, 2020. Mr. Robar, through counsel Mark Snider of the law firm Snider & Smith, LLP, objected that the Village's custom and policy of suppressing Mr. Robar's art violated his First Amendment Rights, his right to equal protection under the Law, that the Junk Storage Law was vague and did not apply to Mr. Robar's art, and other defenses.

54. On July 20, 2020, the Village Board adopted a resolution (the "Board Resolution") determining that each of Mr. Robar's Properties was in violation of the Junk Storage Law and purporting to "direct the removal of all the toilets on all the properties at issue on or before September 1, 2020."

55. The Board Resolution further provided that "[i]f the toilets are not fully and completely removed from all the properties at issue the Village Trustees reserves the right to direct entry by the Village upon all the properties at issue to effect the removal and/or abatement at the expense of Mr. Robar . . ."

56. On or about July 15, 2020, the Watertown Daily Times published an article stating that "It's no secret that village officials don't hold their constituent's artistic sentiments in high esteem, and the junk storage law was the latest mechanism implemented to compel him to clean up his sites." The article opined that "Potsdam authorities are violating Mr. Robar's rights by mandating he adhere to their idea of an acceptable visual presentation, and they need to stop their campaign against him."

57. Taken together, the Village's foregoing appearance tickets, adoption of the Junk Storage Law, Notices to Comply, and Board Resolution comprise a widespread custom and practice.

58. Under the Junk Storage Law, Village Code, and New York law, the Village Board of Trustees has final policymaking authority.

## AS AND FOR A FIRST CAUSE OF ACTION
### (First Amendment)

59. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

60. The Notices to Comply and the Board Resolution were created, adopted, and enforced under color of state law.

61. The foregoing conduct of Defendants is part and parcel of an unlawful campaign to suppress Plaintiff's rights to artistic expression and political protest, as guaranteed by the First Amendment to the United States Constitution.

62. Defendants' restrictions on Plaintiff's artistic expression and political protest is content-based, and based solely on the medium of Plaintiff's artistic expression and political protest.

63. The Village Board's true purpose in adopting the Junk Storage Law was to silence Plaintiff's artistic expression and political protest.

64. As a direct and proximate result of Defendants' violations of Plaintiff's First Amendment rights, Plaintiff has suffered, and will suffer, irreparable harm.

65. Plaintiff is entitled to declaratory and injunctive relief, together with damages in an amount to be proven at trial, but in no event less than $7 million.

## AS AND FOR A SECOND CAUSE OF ACTION
(Equal Protection – Fourteenth Amendment)

66. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

67. By reason of the aforementioned free speech restrictions, including the Notices to Comply and the Board Resolution created, adopted and enforced under color of state law, Defendants have unconstitutionally deprived Plaintiff of the equal protection of the law guaranteed under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, in that Defendants are suppressing Plaintiff from expressing an artistic and political message based on its content and medium.

68. The Village is selectively enforcing the Junk Storage Law against Plaintiff's art.

69. As a direct and proximate result of Defendants' violations of Plaintiff's First Amendment rights, Plaintiff has suffered, and will suffer, irreparable harm.

70. Plaintiff is entitled to declaratory and injunctive relief, together with damages in an amount to be proven at trial, but in no event less than $7 million.

## AS AND FOR A THIRD CAUSE OF ACTION
(Visual Artist Rights Act)

71. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

72. By reason of the aforementioned suppression of Plaintiff's art, and attempts to destroy and forcibly remove Plaintiff's art, Defendants are liable for violation of Plaintiff's rights under the Visual Artist Rights Act of 1990, 17 U.S.C. §106A ("VARA").

73. As a direct and proximate result of Defendants' violations of Plaintiff's rights under VARA, Plaintiff has suffered, and will suffer, irreparable harm.

74. Plaintiff is entitled to declaratory and injunctive relief, together with damages in an amount to be proven at trial, but in no event less than $7 million.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Declaratory Judgment)

75. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

76. Plaintiff's art does not constitute "junk" as defined under the Junk Storage Law.

77. The Defendants have nonetheless adopted a policy and practice of attempting to destroy Plaintiff's art based upon their finding that it constitutes "junk" as defined under the Junk Storage Law.

78. Plaintiff is therefore entitled to a declaration that the porcelain planters located at each of the aforementioned Properties do not constitute "junk" and do not violate the Junk Storage Law, together with injunctive relief.

**WHEREFORE**, Plaintiff respectfully requests that the Court issue an order and judgment (1) declaring that Defendants' restriction on Plaintiff's speech, including the Notices to Comply and the Board Resolution violates the First and Fourteenth Amendments to the United States Constitution and the VARA; (2) declaring that Plaintiff's art does not constitute "junk" under the Village of Potsdam's Junk Storage Law; (3) preliminarily and permanently enjoining Defendants' speech restriction and its application to Plaintiff's art; (4) awarding Plaintiff damages in an amount to be proven at trial but in no event less than $7 million; (5) awarding Plaintiff his reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1983 and other applicable law; and (6) granting Plaintiff such other and further relief as the Court shall deem just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. Pro. 38, Plaintiff demands a jury on all issues so triable.

Dated: Albany, New York  
       August 21, 2020

WHITEMAN OSTERMAN & HANNA LLP

By: _____  
Jon E. Crain, Esq. (Bar Roll No. 518634)  
*Attorneys for Plaintiff*  
One Commerce Plaza  
Albany, New York 12260  
(518) 487-7600  
jcrain@woh.com